UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-61474-CIV-MORENO/SELTZER

NATIONAL BUILDERS INSURANCE
COMPANY f/k/a VININGS INSURANCE
COMPANY, a foreign corporation,

    Plaintiff,

vs.

RQ BUILDING PRODUCTS, INC., a Florida
corporation, HARRIS KREICHMAN, an
individual, LORI KREICHMAN, an individual,
MATTHEW KREICHMAN, an individual, and
MICHAEL KREICHMAN, an individual,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** has come before the undersigned pursuant to the District Court's Order Referring Case to the Magistrate Judge [DE 54] for disposition or recommendation on all pretrial matters as provided by 28 U.S.C. § 636. Currently pending are Plaintiff National Builders Insurance Company f/k/a Vinings Insurance Company's ("National Builders" or "Plaintiff") Motion for Final Summary Judgment [DE 49] and a Cross-Motion for Summary Judgment [DE 57] filed by Defendants Harris Kreichman, Lori Kreichman, Matthew Kreichman, and Michael Kreichman (collectively, "the Kreichmans").

I.    BACKGROUND

National Builders issued three contracts of insurance to Defendant RQ Building Products, Inc. ("RQ") : (1) Policy No. GLP 008539 02, effective 5/28/12 to 5/28/13; (2) Policy No. GLP 0085349 03, effective 5/28/13 to 5/28/14; and (3) Policy No. GLP 008539

02, effective 5/28/14 through its cancellation on 9/18/14 (collectively, the "Policies").  The Policies provide commercial general liability insurance for claims involving property damage and bodily injury caused by an occurrence that takes place during the policy period.

RQ has been named as a defendant in a Florida circuit court action[1] brought by the Kreichmans seeking to recover damages for property damage and bodily injury, including medical expenses, "arising from mold and dust mite infestation" in connection with the construction of a single-family residence located in the development known as Parkland Golf & Country Club in Parkland, Florida.  National Builders has been providing a defense to RQ in the underlying action under a reservation of rights.

On July 25, 2017, National Builders filed this action seeking a declaration that it has no obligation to defend or indemnify RQ under the Policies. The Policies are attached to and made part of National Builder's Second Amended Complaint for Declaratory Relief [DE 33].  Defendants are RQ, as the insured, and the Kreichmans, as necessary parties to this action as their rights, if any, may be impacted by this Court's declaration. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332(a)(1).  RQ and the Kreichmans have filed answers to the Second Amendment Complaint.

The Kreichmans previously moved to stay this case pending resolution of the underlying state court action.  The District Court granted the motion and stayed this case in its entirety.  After National Builders appealed the stay, the Eleventh Circuit affirmed the

---

[1] <u>Harris Kreichman et al. v. Engineered Air, LLC, et al.</u>, Case No. 2017- CA - 005964, pending in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (hereinafter the "underlying action").

stay as to the indemnification issue but reversed the stay as to the duty to defend issue. The court remanded the case for further proceedings as to National Builder's duty to defend [DE 27]. National Builders' Motion for Summary Judgment seeks a declaration that it does not owe a duty to defend under the Policies because the alleged property damage and bodily injury did not occur during the policy period.[2] National Builders also seeks a declaration that the equitable and injunctive relief sought by the Kreichmans in the underlying action is not covered under the Policies.

The Kreichmans have filed a memorandum of law in opposition to National Builder's Motion for Summary Judgment, in which they incorporate a Cross-Motion for Summary Judgment Declaring That Builders Is Obligated to Provide a Defense to RQ Building Products [DE 57]. The Kreichmans have not submitted a Statement of Material Facts either in support of its Motion for Summary Judgment or in opposition to National Builder's Motion for Summary Judgement as required by Local Rule 56.1, Local Rules for the United States District Court for the Southern District of Florida.

National Builders has filed a reply memorandum [DE 62]. RQ has not filed any documents in reference to the pending motions. The matter is now ripe for consideration.

II.    MOTION FOR SUMMARY JUDGMENT

    A.    Legal Standards for Summary Judgment

Summary judgment is authorized where there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Adickes v. S.H. Kress &

---

[2] For purposes of its Motion for Summary Judgment only, National Builders does not dispute the existence of "bodily injury" and "property damage" [DE 49].

3

Co., 398 U.S. 144, 157(1970). The nonmoving party may not simply rest upon mere allegations or denials of the pleadings, but must establish the essential elements of its case on which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmovant must present more than a scintilla of evidence in support of its position. A jury must be reasonably able to find for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). In deciding a summary judgment motion, the court must view the facts in the light most favorable to the nonmoving party. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006). The court's function at this stage is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law. Owners Ins. Co. v. Superior Framing, Inc., 2017 WL 3668772, at *5 (M.D. Fla. Feb. 21, 2017).

    B.    Legal Standards for Duty to Defend

Federal courts will follow Florida's state law treatment of the duty to defend. Trizec Properties, Inc. v. Blitmore Constr. Co., 767 F.2d 810, 811 n.2 (11th Cir. 1985). "The duty to defend 'depends solely on the allegations in the complaint filed against the insured.'" Id. at 811 (quoting Tropical Park, Inc. v. United States Fidelity and Guaranty Co., 357 So.2d 253, 256 (Fla. 3d DCA 1978)). "The complaint must allege facts which fairly bring the case within coverage even though ultimately there may be no liability on the part of the insured." Id. at 811. "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." Id. at 812. "The duty

4

to defend is separate and apart from the duty to indemnify and the insurer may be required to defend a suit even if the later true facts show there is no coverage." Id. (citing Klaesen Bros., Inc. v. Harbor Ins. Co., 410 So.2d 611, 612-13 (Fla. 4th DCA 1982); Burton v. State Farm Mutual Auto. Ins. Co., 335 F.2d 317, 321 (5th Cir.1964)). "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured, and if the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered." Trizec Properties, 767 F.2d at 812 (citation omitted). Conversely, if the allegations in the underlying complaint do not fall within the policy's insuring agreement, or "if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." Keen v. Florida Sheriff's Self-Insurance, 962 So.2d 1021, 1024 (Fla. 4th DCA 2007).

C.   Undisputed Facts

The facts in this case are undisputed.[3] As noted above, the Kreichmans have not submitted a Statement of Material Facts either in support of its Motion for Summary Judgment or in opposition to National Builder's Motion for Summary Judgment as required by Local Rule 56.1. National Builders' Statement of Material Facts in Support of Its Motion for Summary Judgment [DE 50] is, therefore, deemed admitted. See Cargo Airport Servs., USA, LLC v. Transcarga Int'l Airways, C.A., Inc., 2017 WL 4898292, at *3 (S.D. Fla. Oct. 27, 2017) (Moreno, J.) (citing Pompano Helicopters, Inc. v. Westwood One, Inc., 2009 WL 1515276, at *1 (S.D. Fla. May 29, 2009) (deeming all facts in motion for summary

---

[3] The following facts are taken from National Builders' Statement of Material Facts in Support of Its Motion for Summary Judgment [DE 50] and the Second Amended Complaint in the underlying action [DE 33-4].

judgment admitted where non-movant did not specifically respond, paragraph by paragraph, with corresponding numbers as required by Local Rule 56)).

The Policies contain the following pertinent coverages and definitions:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments –Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

6

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred in whole or in part.

If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** -Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

>> **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.
>
> **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".
>
> \* \* \*
>
> **SECTION V – DEFINITIONS**
>
> \* \* \*
>
> **3.** "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> \* \* \*
>
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> **17.** "Property damage" means:
>
>> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>>
>> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> \* \* \*

[DE 33-1, 3] (¶2).

The operative underlying complaint is the Second Amended Complaint filed in the state court on November 20, 2017 (¶ 3), which is attached as an exhibit to National Builders' pleading [DE 33-4]. The underlying complaint alleges that the Kreichmans entered into an agreement of sale with Toll FL V LLC ("Toll") for the purchase of a lot

beneath, and construction of, property located in Parkland, Florida (¶ 5). Toll subsequently contracted with RQ for the design, construction, installation and/or maintenance of windows and sliding glass doors of the property (¶ 6). The Kreichmans took possession of the property, and began residing there, on September 16, 2014 (¶ 7). The Policies lapsed on September 18, 2014 (¶ 1). Two of the Kreichmans – Michael and Harris – began to experience symptoms associated with the alleged bodily injuries by September 2015 (¶ 10), and the remaining two Kreichmans – Lori and Matthew – manifested symptoms in March 2016 and September 2016, respectively (¶ 11).

The underlying complaint alleges the following:

> 221. Defendant [RQ] breached their duties of due care to the Plaintiffs by failing to perform, and/or refraining from performing, construction and corrective work; by having work performed in a faulty and negligent manner; by having work performed in a manner which fell below accepted standards for South Florida in their area of practice; by having work performed which was inadequate and inappropriate for the purposes for which it was intended; causing and/or contributing to growth of toxigenic and/or allergenic fungi and dust mites creating an adverse health risk and personal injury to the occupants thereof; and that such breaches contributed to and/or caused the defects and damages described herein. Defendant owed Plaintiffs a duty imposed by law to avoid harm to the Plaintiffs and occupants of the Residence.
>
> * * *
>
> 223. The following work was not performed in a workmanlike manner and/or was defective:
>
> (a) defective, negligent and/or inadequate construction, design, and/or installation of windows and window components;
>
> (b) all of which resulted in chronic water intrusion into the walls, columns, ceilings, interstitial cavities and/or drywall and baseboard of the Residence which caused microbiological contamination in the form of the growth of toxic and/or

> allergenic fungi and dust mites which posed a serious health hazard to the occupants of the home, have caused personal injury to occupants of the home, and required evacuation of the occupants of the home for the repair and remediation of this serious health hazard.
>
> 224.   All the defects and conditions were latent and in existence at the time Plaintiff took occupancy of the Residence. Said damages are continuous and progressive over time.
>
> * * *
>
> 228.   As a direct and proximate result of the foregoing, the Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, personal injuries to the Plaintiffs who have suffered significant injuries, pain and suffering, mental anguish, loss of capacity for enjoyment of life, aggravation or pre-existing condition and medical expenses. The losses are either permanent in nature or continuing in nature, and Plaintiffs will suffer losses in the future.
>
> 229.   As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which amount includes, but is not limited to, property damages, personal property damages, and personal injury to the Plaintiffs, in an amount in excess of $15,000.00.
>
> 230.  The foregoing breaches of duty were both the legal and factual cause of the aforementioned damages.

[DE 33-4].

Count X of the underlying complaint additionally asserts "equity claims for medical monitoring against the Defendants, arising from their exposure to mold and/or dust mites." [DE 33-4, ¶ 277]. The Plaintiffs move in equity for all of the defendants to establish and fund a medical monitoring program. [DE 33-4, ¶ 284].

Based upon these facts, both National Builders and the Kreichmans seek summary judgment in the form of a declaration of National Builders' duty to defend the underlying complaint.

III.    DISCUSSION

The Policies at issue are "occurrence-based" liability policies, that is, coverage is provided for property damage and bodily injury caused by an "occurrence" that takes place during the policy period.  See U.S. Fire Ins. Co. v. J.S.U.B, Inc., 979 So.2d 871, 882 (Fla. 2007).  Furthermore, the motions before the Court pertain only to National Builders' duty to defend, as the case is stayed as to National Builders' duty to indemnify [DE 27].

"An insurance company must defend an action where the facts alleged against the insured would give rise to coverage, even if those facts are not ultimately proven at trial." Carithers v. Mid-Continent Cas. Co., 782 F.3d 1240, 1246 (11th Cir. 2015) (applying Florida law).  Therefore, the crux of the parties' dispute is whether the Second Amended Complaint in the underlying action alleges that the occurrence which caused the Kreichmans' bodily injuries and property damage[4] took place during the time the Policies were in effect.  See id. at 1245 (noting that a duty to defend is determined using only the allegations in the complaint in the underlying action) (citing Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So.2d 435, 442-43 (Fla. 2005)).

National Builders argues that the complaint in the underlying action alleges no set of facts under which "property damage" caused by RQ's work could have occurred while it insured RQ:  "There are no allegations of property damage during construction or for the

---

[4] For purposes of its Motion for Summary Judgment, National Builders does not dispute that the Kreichmans suffered bodily injury and property damage [DE 49].

11

two days of coverage before the last Builders' policy ended" [DE 49, p. 11].  Specifically, National Builders contends that the underlying complaint "does not contain a single allegation that the mold growth and/or dust mite proliferation existed either during construction or during the policy period of the Policies" [DE 49, p.11].  The undersigned disagrees.  Paragraph 223 of the underlying complaint states that "defective, negligent and/or inadequate construction, design, and/or installation of windows and window components . . resulted in chronic water intrusion into the walls, columns, ceilings, interstitial cavities and/or drywall and baseboard . . . which caused microbiological contamination . . . [causing] personal injury to the occupants of the home, and required evacuation of the occupants . . for the repair and remediation . . ." [DE 33-4, ¶ 223].  Further, the underlying complaint alleges that "[a]ll of the defects and conditions were latent and in existence at the time Plaintiff took occupancy of the Residence.  Said damages are continuous and progressive over time" [DE 33-4, ¶ 224].

      The parties do not dispute that, for purposes of a duty to defend analysis, Florida law establishes that "an 'occurrence,' in the 'property damage' context, is triggered when the physical injury to property arises – and not when the alleged defective or deficient work is performed" [DE 62, p. 3] (National Builder's Reply Memorandum).  This is known as the trigger-in-fact test.  See Carithers v. Mid-Continent Cas. Co., 782 F.3d 1240, 1245-46 (11th Cir. 2015) (district court did not err in finding a duty to defend under a 2008 policy even though the underlying complaint alleged that the damages could not have been discovered by reasonable inspection until 2010); Trizec Properties, Inc. v. Biltmore Constr. Co., 767 F.2d 810 (11th Cir. 1985) (allegations that physical injury to tangible property occurred during the policy period triggered a duty to defend); Trovillion Const. & Dev., Inc. v. Mid-

Continent Cas. Co., 2014 WL 201678, at *4-*5 (M.D. Fla. Jan. 17, 2014) (finding a duty to defend under the trigger-in-fact test where complaint "inferentially suggested that physical damage occurred" during the time policies were in existence); Axis Surplus Ins. Co. v. Contravest Constr. Co., 921 F. Supp. 2d 1338 (M.D. Fla. 2012) (insurer had a duty to defend where the underlying complaint "suggests that the damage occurred at some point after the buildings were completed" which time necessarily included the time the policies were in effect).

Mindful of the rule that an "insurance company must defend an action where the facts alleged against the insured would give rise to coverage, even if those facts are not ultimately proven at trial," Carithers, 782 F.3d at 1246, the undersigned concludes that the facts alleged in the underlying complaint do give rise to a duty to defend. The underlying complaint clearly states that water intrusion occurred as a result of RQ's negligent workmanship in designing and installing windows, which led to toxic fungi and/or dust mites and that "the defects and conditions were latent and in existence at the time Plaintiff took occupancy of the Residence" [DE 33-4, ¶ 223, 224]. These allegations are not conclusory or without factual support. The home was completed at the time of sale and possession by the Kreichmans. The windows were necessarily installed before the Kreichmans moved into the home (while the Policies were in effect). It is not unreasonable to conclude, for purposes of determining whether a duty to defend exists, that the water intrusion and fungi growth alleged in the underlying complaint – the trigger-in-fact that caused the property damage – occurred during the period between the time in which the windows were installed and the Kreichmans moved into the property. And, because that is what the underlying complaint alleges, the undersigned concludes that a duty to defend exists. See Carithers,

782 F.3d at 1246 ("insurer is obligated to defend a claim even if it uncertain whether coverage exists under the policy") (quoting Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., 601 F.3d 1143, 1149 (11th Cir. 2010)).

National Builders argues that it does not have a duty to defend because the Kreithmans' medical issues did not manifest themselves until well outside of the Policy periods. The Court need not address that issue, however, in considering National Builders' duty to defend. It is well-established in Florida that "if the [underlying] complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." Lime Tree Village Community Club Ass'n, Inc. v. State Farm General Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993) (citations omitted). Although the Court will necessarily be required to determine coverage for bodily injuries in the indemnification portion of the case, it is premature to make that determination. See Axis Surplus, 921 F. Supp. 2d at 1349 (determining that insurer had a duty to defend but noting that "a decision as to its duty to indemnify is premature"). Indeed, the indemnification portion of this case is stayed pending resolution of the underlying state court litigation [DE 27].

Finally, National Builders' request for a declaration that the medical monitoring claim is not covered is likewise premature. Only the duty to defend issue is currently before the Court. National Builders' liability (or lack thereof) for coverage for the medical monitoring claim does not affect its duty to defend the underlying action, as discussed above.

IV.     CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that National Builders' Motion for Final Summary Judgment [DE 49] be **DENIED** and that the Kreichman Defendants' Cross-Motion for Summary Judgment Declaring That Builders Is Obligated to Provide a Defense to RQ Building Products be **GRANTED.**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers, Fort Lauderdale, Florida, this 7th day of September 2018.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Federico A. Moreno
Counsel of record via CM/ECF